01

02

03

04

05

06                              UNITED STATES DISTRICT COURT
                               WESTERN DISTRICT OF WASHINGTON
07                                        AT SEATTLE

08  SIMON ZERABRUK,                          )
                                             )   CASE NO. C10-1572-RAJ-MAT
09          Petitioner,                      )
                                             )
10          v.                               )   REPORT AND RECOMMENDATION
                                             )   RE:   INDEFINITE DETENTION
11  ICE FIELD OFFICE DIRECTOR,               )
                                             )
12          Respondent.                      )
    _____ )
13

14          I.      INTRODUCTION AND SUMMARY CONCLUSION

15          Simon Zerabruk ("petitioner") is a native of Ethiopia and a citizen of Eritrea who has

16  been detained by the United States Immigration and Customs Enforcement ("ICE") since

17  September 22, 2010, pursuant to an order of removal that became final on April 2, 2010.   On

18  November 3, 2010, petitioner, proceeding pro se, filed the instant Petition for Writ of Habeas

19  Corpus pursuant to 28 U.S.C. § 2241, which seeks his release from custody.   (Dkt. 7.)

20  Respondent has filed a motion to dismiss, arguing that petitioner is subject to a final order of

21  removal and is lawfully detained under Section 241 of the Immigration and Nationality Act

22  ("INA").   (Dkt. 11.)

01      For the reasons set forth below, the Court recommends that petitioner's habeas petition

02 be GRANTED, and respondent's motion to dismiss be DENIED.

03           II.      BACKGROUND AND PROCEDURAL HISTORY

04      Petitioner is a native of Ethiopia and a citizen of Eritrea.   Administrative Record

05 ("AR") at R11.   On or about June 18, 2009, he filed an I-589 application for asylum with the

06 asylum office in San Francisco, California.   (AR R2-11.)   The asylum office found

07 petitioner's claim not credible and referred petitioner's application to an immigration judge

08 ("IJ") for adjudication in removal proceedings.   (AR R50.)   On July 29, 2009, the Department

09 of Homeland Security ("DHS") served petitioner with a Notice to Appear, charging him as

10 subject to removal from the United States pursuant to INA § 212(a)(6)(A)(i), for being present

11 in the United States without being admitted or paroled.   (AR L112-13, L135.)

12      On September 1, 2009, petitioner appeared with counsel before an IJ and admitted all

13 the allegations contained in the Notice to Appear and conceded his removability, but renewed

14 his applications for asylum, withholding of removal, and protection under the Convention

15 Against Torture.   (AR L321-22.)   On March 2, 2010, the IJ denied petitioner's applications

16 for relief and ordered him removed to Eritrea.   (AR L257.)   Petitioner reserved appeal but

17 never filed an appeal of the IJ's decision with the Board of Immigration Appeals ("BIA").

18 (AR L257, L321.)   Accordingly, petitioner's order of removal became administratively final

19 on April 2, 2010.   *See* INA § 101(a)(47)(B)(ii), 8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. §

20 1003.38(b).

21      On May 28, 2010, petitioner, represented by new counsel, filed a motion to reopen

22 removal proceedings with the immigration court, which denied the motion on August 25, 2010.

01    (AR L258-301, L319-22.)   Petitioner appealed the denial of his motion to reopen to the BIA on

02    September 27, 2010.   (AR L334.)   His appeal remains pending with the BIA.   (AR L334.)

03          On September 22, 2010, petitioner was taken into immigration custody pursuant to a

04    final order of removal to Eritrea.   (Dkt. 13, Decl. of Jose H. Arroyo.)   In a Declaration

05    submitted to the Court, however, Deportation Officer Jose H. Arroyo states that, as of

06    December 3, 2010, "ICE has been unable to secure any travel documents for Mr. Zerabruk,"

07    and that travel documents to Eritrea "are extremely difficult to procure."   *Id*.   He further states

08    that "it is extremely difficult to identify and engage with the appropriate Eritrean authorities in

09    order to produce the requisite travel documents," and that "ICE cannot state with certainty that

10    Mr. Zerabruk will be issued travel documents by his government within the next 12 months."

11    *Id*.   Deportation Officer Arroyo indicates that petitioner has been cooperative with ICE

12    officials.   *Id*.   The Administrative Record contains no further information regarding efforts to

13    obtain travel documents for petitioner's removal to Eritrea.   ICE has provided no evidence that

14    it has conducted a review of petitioner's custody since he was detained on September 22, 2010.

15          On November 3, 2010, petitioner filed the instant habeas petition, challenging his

16    detention.   (Dkt. 7.)   Respondent filed a Return and Motion to Dismiss (Dkt. 11) on December

17    3, 2010, and petitioner filed a response (Dkt. 15) on December 20, 2010.   Respondent did not

18    file a reply.

19                         III.    DISCUSSION

20          "When a final order of removal has been entered against an alien, the Government must

21    facilitate that alien's removal within a 90-day 'removal period.'"   *Thai v. Ashcroft*, 366 F.3d

22    790, 793 (9th Cir. 2004)(citing *Xi v. INS*, 298 F.3d 832, 834-35 (9th Cir. 2002)); INA §

01   241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A)("Except as otherwise provided in this section, when an

02   alien is ordered removed, the Attorney General shall remove the alien from the United States

03   within a period of 90 days (in this section referred to as the 'removal period')").   The removal

04   period begins on the *latest* of the following:

05              (i)      The date the order of removal becomes administratively final.

06              (ii)     If the removal order is judicially reviewed and if a court orders a
                         stay of the removal of the alien, the date of the court's final order.
07
08              (iii)    If the alien is detained or confined (except under an immigration
                         process), the date the alien is released from detention or
                         confinement.
09

10   8 U.S.C. § 1231(a)(1)(B); *see also Khotesouvan v. Morones*, 386 F.3d 1298, 1300 n.3 (9th Cir.

11   2004)(stating that the 90-day removal period commences on "the date the order of removal

12   becomes final; the date a reviewing court lifts its stay following review and approval of the

13   order of removal; or the date the alien ordered removed is released from non-immigration

14   related confinement.").   During the removal period, continued detention is required.   *See* INA

15   § 241(a)(2), 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall

16   detain the alien.").   "If the alien does not leave or is not removed within the removal period, the

17   alien, pending removal, shall be subject to supervision under regulations prescribed by the

18   Attorney General."   INA § 241(a)(3), 8 U.S.C. § 1231(a)(3).   Those regulations require that

19   before making a decision on whether to release a detainee, a determination must be made as to

20   whether travel documents are immediately available, whether the detainee is nonviolent,

21   whether the detainee is likely to pose a threat to the community following release, whether the

22   detainee is likely to violate the conditions of release, and whether the detainee poses a

REPORT AND RECOMMENDATION
RE:  INDEFINITE DETENTION
PAGE -4

01  significant flight risk if released.   *See* 8 C.F.R. § 241.4(e).

02      Where removal cannot be accomplished within the ninety-day removal period,

03  detention of certain aliens beyond the removal period is authorized by INA § 241(a)(6), 8

04  U.S.C. § 1231(a)(6); *see Zadvydas v. Davis*, 533 U.S. 678, 682, 121 S. Ct. 2491, 150 L. Ed. 2d

05  653 (2001).   In *Zadvydas*, the Supreme Court determined that the government is entitled to a

06  presumptively reasonable period of detention of six months to bring about the alien's removal

07  from the United States.   *Zadvydas*, 533 U.S. at 701.   After this six month period, the alien is

08  eligible for conditional release upon demonstrating that there is "no significant likelihood of

09  removal in the reasonably foreseeable future."   *Id.*

10      In the present case, the immigration judge entered an order of removal on March 2,

11  2010, and no appeal was taken.   (AR L257, L321.)   Thus, petitioner's order of removal

12  became administratively final on April 2, 2010, upon expiration of the 30-day appeal period,

13  thereby commencing the 90-day removal period.   *See* INA § 101(a)(47)(B)(ii); INA §

14  241(a)(1)(B)(i), 8 C.F.R. § 1241.1(c).   Accordingly, the 90-day removal period expired on or

15  about July 2, 2010, and the presumptively reasonable six-month period in *Zadvydas* expired on

16  or about October 2, 2010.

17      Respondent argues that the presumptively reasonable six-month period of detention has

18  not expired.   (Dkt. 11 at 6.)   Rather, respondent contends that the 90-day removal period was

19  triggered and began to run on September 21, 2010, the day petitioner was taken into ICE

20  custody, and that the presumptively reasonable period under *Zadvydas* will not expire until

21  March 21, 2010.   *Id.*   Thus, according to respondent, petitioner's detention remains lawful

22  under INA § 241 and *Zadvydas*.   *Id.*   Respondent's argument is contrary to the plain language

01  of the statute.

02      As indicated above, INA § 241(a)(1)(B) provides that the removal period begins to run

03  on the latest of the following:   the date the removal order becomes final; the date a reviewing

04  court lifts its stay following review and approval of a final order; or the date the alien ordered

05  removed is released from non-immigration related detention.   *See* INA § 241(a)(1)(B)(i)-(iii).

06  Thus, petitioner's removal period began on April 2, 2010, the date his removal order became

07  administratively final, unless §§ 241(a)(1)(B)(ii) or (iii) dictate a later date.   *See Diouf v.*

08  *Mukasey*, 542 F.3d 1222, 1229-30 (9th Cir. 2008).   The Court finds neither section dictates a

09  later date.   Nor does the fact that petitioner was not taken into ICE custody until September 21,

10  2010, change the analysis.   *See Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 499

11  (S.D.N.Y. 2009)(rejecting the government's argument that the removal period did not begin

12  until the petitioner was taken into custody); *Ulysse v. Dep't of Homeland Sec.*, 291 F. Supp. 2d

13  1318, 1325 (M.D. Fla. 2003)(finding the government's argument that the removal period did

14  not begin until the petitioner was taken into custody "flies in the face of the plain reading of the

15  statute and Congress' intent that removal of the alien . . . should be done within 90 days of the

16  removal order being final."); *Habtegaber v. Jenifer*, 256 F. Supp. 2d 692, 697 (E.D. Mich.

17  2003)(same).   The Court, therefore, finds, under the clear and unambiguous language of the

18  statute, the petitioner's removal period began on April 2, 2010, the date his order of removal

19  become administratively final, and the removal period, along with the presumptively

20  reasonable six-month detention period, has lapsed.

21      The Court must, therefore, determine whether petitioner has shown that "there is no

22  significant likelihood of removal in the reasonably foreseeable future," and if so, whether the

01   government has responded with "evidence sufficient to rebut that showing." *Zadvydas*, 533

02   U.S. at 701.   The Court finds that petitioner has satisfied his burden of showing that there is no

03   significant likelihood of removal in the reasonably foreseeable future, and that respondent has

04   failed to rebut that showing.

05        As petitioner points out, ICE has conceded that he has cooperated with efforts to obtain

06   travel documents for his removal, nevertheless, ICE cannot state that any travel documents will

07   be issued within the next 12 months.   (Dkt. 15 at 4; Dkt. 13.)   The government has contacted

08   the Eritrean Consulate and requested a travel document for petitioner's removal, however, the

09   request remains pending.   (Dkt. 15 at 4; Dkt. 11 at 6.)   ICE indicates that, "[i]n theory, Eritrea

10   does repatriate its citizens; however, in practice it is extremely difficult to identify and engage

11   with the appropriate Eritrean authorities in order to produce the requisite travel documents."

12   (Dkt. 13.)   Respondent contends, "[a]lthough ICE is not overly optimistic that a travel

13   document will be issued, there is currently no evidence that the request will be ultimately

14   denied."   (Dkt. 11 at 7.)   This is not sufficient evidence to rebut petitioner's showing.

15   Contrary to respondent's claims, he has not demonstrated to this Court that a travel document

16   will issue or that petitioner's detention should continue.   Because petitioner's removal is no

17   longer reasonably foreseeable, his detention is no longer authorized by INA § 241(a)(6).

18   //

19   //

20   //

21   //

22   //

REPORT AND RECOMMENDATION
RE:   INDEFINITE DETENTION
PAGE -7

01                                IV.     CONCLUSION

02          For the foregoing reasons, I recommend that the Court GRANT petitioner's petition for

03  writ of habeas corpus and order respondent to release him subject to supervision under INA §

04  241(a)(3) and the regulations prescribed by the Attorney General under 8 C.F.R. § 241.5(a).   A

05  proposed order accompanies this Report and Recommendation.

06          DATED this 27th day of January, 2011.

07

08                                                    _____
                                                      Mary Alice Theiler
09                                                    United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
RE:   INDEFINITE DETENTION
PAGE -8